INHABITANTS OF HARRISON *versus* INHABITANTS OF LINCOLN.

In a pauper action for supplies furnished to A and B, in which it is admitted that the legal settlement of A, at the time the supplies were furnished, was in the defendant town, and the only question is in regard to the settlement of B, the plaintiffs, by proving the prior due solemnization of a marriage between A and B, make out a *prima facie* case.

They are not bound in the first instance to establish affirmatively, that the parties were capable of contracting a legal marriage.

But the validity of the alleged marriage may be impeached by evidence of a former marriage and the continued life of both parties.

If the defendants would avoid the effect of the apparently legal marriage, they must prove the facts which will invalidate it.

If the defendants show that B was legally married to a person other than A, before the alleged marriage to A, and that the former husband was alive less than seven years before the second marriage, the latter, by force of our statute, (R. S., of 1841, c. 87, § 4, c. 160, §§ 5 and 6,) will be held invalid, unless the plaintiffs prove the death of the former husband before the second marriage.

ON EXCEPTIONS to the rulings of HATHAWAY, J.

ASSUMPSIT for supplies furnished to Ebenezer H. Kneeland and Mary Kneeland. It was admitted that, at the time the supplies were furnished, Ebenezer H. Kneeland had his legal settlement in the defendant town, and the only question was in relation to the settlement of Mary Kneeland.

The supplies were furnished in 1857. The plaintiffs proved the due solemnization of a marriage between Ebenezer H. Kneeland and Mary Kneeland in September, 1852. The defendants proved that she was legally married in 1830, to one Smith; and offered evidence tending to prove, that he was alive in 1851, and that she knew he was alive in 1850. There was no direct proof of his death.

The testimony was reported upon a motion to set aside the verdict as being against the evidence.

The presiding Judge, among other instructions, gave the jury the following: —

*That* they were to determine, from the evidence, whether Mary Kneeland was the lawful wife of Ebenezer H. Kneeland.

*That,* if when she was married to Kneeland her former hus-

band was living, her marriage with Kneeland was void, because a violation of law of which she would have been guilty.

*That,* whether or not Samuel S. D. Smith was the man to whom she was married in Vermont, they must determine from the evidence in the case.

*That,* in the absence of any proof to the contrary, the presumption would be, that, at the time of her marriage with Kneeland, she was, as she represented herself to be, *a widow.*

*That* the burden of proof was upon defendants to show that her former husband was living at the time of her marriage with Kneeland.

*That* it had been held in some such cases, that the presumption of the wife's innocence was stronger that the presumption of the life of her former husband, but, that the jury must determine from the whole evidence, whether, or not, they were satisfied that her former husband was living at the time of her marriage with Kneeland.

The verdict was for the plaintiffs for the full amount claimed by them, and the defendants excepted.

*Shepley & Dana,* for defendants.

*A. A. Strout,* (with whom were *Howard & Strout,*) for plaintiffs.

1. The settlement of Ebenezer H. Kneeland is admitted to have been in the defendant town at the time the supplies were furnished. The evidence shows that Mary Kneeland was married to Ebenezer H. Kneeland, Sept. 26, 1852, and that they have since cohabited together as husband and wife. That marriage being legal, the wife would follow and have the settlement of her husband. R. S., c. 24, § 1, mode 1; *Greene* v. *Windham,* 13 Maine, 225.

2. If Mary Kneeland, at the time of her marriage with Ebenezer H. Kneeland, had another lawful husband living, then her marriage with Kneeland would be both invalid and criminal. The presumption in favor of its validity, and of her innocence, must prevail until the contrary is *clearly* shown. The burden of proof, therefore, would be on the defendants,

if they would show that marriage void. This they cannot do, unless they *prove* the former husband *living* at the time of her marriage with Kneeland in 1852. 1 Greenl. Ev. (8th ed.,) §§ 34, 35, 41, 80; *Raynham* v. *Canton,* 3 Pick., 293; *Gray* v. *Gardiner,* 17 Mass., 188.

3. In some cases the presumption of innocence has been deemed sufficiently strong to overcome the presumption of life. But the presumption is not absolute, and the decided cases would seem to indicate, that (as was done in this case,) the whole question should be left to the decision of the jury. *Rex* v. *Twining,* 2 B. & Ald., 385; 1 Greenl. Ev., (8th ed.,) §§ 35 and 41; 3 Starkie Ev., 935; *White* v. *Mann,* 26 Maine, 370.

The opinion of the Court was drawn up by

KENT, J. — The exceptions in this case arise upon the rulings of the Court, based upon the facts which are fully reported. It was admitted that Ebenezer H. Kneeland had a legal settlement in Lincoln. The question in controversy is, whether Mary Kneeland had also such settlement. The plaintiffs claim that she was legally married to Ebenezer, in September, 1852, in this State; and that thereby she acquired a settlement in Lincoln, by following that of her husband. The plaintiffs having proved the due solemnization of a marriage at that time between the parties, with subsequent cohabitation, rested on this point. This evidence did make out a case *prima facie.*

We do not think that the party, who sets up a marriage, to establish a settlement, is bound to go further in the first instance, and to adduce additional evidence to establish affirmatively that the parties were capable of contracting a legal marriage at the time. The law will assume, in the absence of all other evidence and facts, that the marriage regularly solemnized is valid, because it is not to be assumed that either of the parties has been guilty of bigamy, which is a crime; and because it would require proof extending over

the whole adult lives of the parties, and their acts, to nega-tive the possibility of a former marriage.

It is, however, but *prima facie* evidence. The validity of the marriage may be impeached by evidence of a former mar-riage, and the continued life of both parties. If the plaintiff makes out his case on the first point, then it is clear that the other party, who would avoid the effect of an apparently legal marriage, must prove the facts which will invalidate it.

This was attempted in the present case, and the defend-ants offered proof of the prior marriage of this woman in Vermont, to another man, in 1830. Another fact, howev-er, is essential to make the second marriage invalid, viz., that the first husband was alive at the time of the second marriage. For convenience, we call each a marriage, al-though, strictly speaking, but one could be a legal marriage, if the husband in the first was living when the second cere-mony was performed.

The defendants here invoke the presumption of law, that, when the existence of a person is once established by proof, the law presumes that the person continues to exist as before, until the contrary is shown, or until a different presumption is raised, from the nature of the subject in question, or from a continued absence unheard of for seven years.

The case clearly shows, that the first husband had been seen in good health within the year of the second marriage, and before it took place.

The plaintiffs reply by invoking another presumption of law, viz., that when the presumption of life conflicts with that of innocence, the latter is generally allowed to prevail. 1 Greenl. Ev., § 41. They say that a second marriage, if the first husband was alive, was a criminal offence, and would subject the wife to prosecution and punishment, and that, therefore, the law will rather presume death than guilt; and that this applies as well to civil as to criminal cases. 1 Greenl. on Ev., § 35.

In the absence of any statute provision, this presumption

of innocence might possibly prevail; although it would require great faith to apply it to a case like this, where the former husband had been seen within the year of the marriage, and was known by the wife to be living about two years before that event. But, by the statutes in force at the time, the second marriage was in direct contravention of the law.

By c. 87, § 4, of the R. S., of 1841, it is provided, that "all marriages contracted, while either of the parties has a former wife or husband living, shall be void unless the former marriage shall have been dissolved by a decree of divorce."

By c. 160, §§ 5 and 6, of R. S., of 1841, it is provided, § 5, that "every person having a husband or wife living, who shall marry any other person, whether married or single, shall, except in the cases specified in the following section, be deemed guilty of polygamy, and be punished by imprisonment in the State Prison not more than five years," &c.

Section 6, "the preceding section shall not extend to any person whose husband or wife shall have been continually absent for seven years without being known to such person to be living within that time."

The statute not only fixes the term of seven years as the time during which the presumption of life continues, but, declares that a second marriage within that time, is the offence of polygamy, punishable by imprisonment in the State Prison, unless the party wishing to establish a second legal marriage, taking the burden on himself, shall prove, that when the second marriage took place, the first husband or wife was dead. Such a marriage, therefore, is a direct violation of the provisions of a penal law. It is in direct contravention of the letter and the spirit of that law. On well settled and well known principles, such a contract cannot be regarded as valid. It would be a glaring absurdity for the Court to punish the party for polygamy, and at the same time hold the marriage, which creates the offence, valid. No presumption of innocence can overcome the direct prohibition of the statute. We may well adopt the language of the Court, in the case of

*West Cambridge* v. *Lexington,* 1 Pick., 506,—"It cannot be supposed that the Legislature intended to acknowledge the validity of marriages against which they were establishing severe and ignominious punishments. And, if the contract of marriage is to be assimilated to other civil contracts, as it is in most cases of controversy respecting it, it is not easy to see why it is not void, where such marriage is expressly declared void by the Legislature. We speak here of a prohibition relating to the person contracting, and not that which relates to the form of solemnizing the contract." See also, *Damon's case,* 6 Maine, 148.

The first statute having declared that all marriages, where either of the parties has a former husband or wife alive, shall be *void,* the second fixes the time of seven years during which the law presumes that such former husband or wife, unheard of, is alive. Such a marriage, within that time, is therefore void.

We also find a construction of the statute in *Commonwealth* v. *Marsh,* 7 Met., 472, where it was determined upon a state of facts, like those in this case, that the defendant, having been married a second time, when her husband had been absent and unheard of for a less period than seven years, was liable to conviction for polygamy, although she honestly believed, at the time of her second marriage, that her husband was dead.            *Exceptions sustained;*

*Verdict set aside;*

*New trial granted.*

TENNEY, C. J., RICE, APPLETON, GOODENOW and DAVIS, JJ., concurred.